UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRENCE A. COLBERT, | ) | CIVIL ACTION NO. 3:20-CV-1066 |
| Plaintiff | ) | |
| | ) | (MANNION, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ALLSTATE PROPERTY AND | ) | |
| CASUALTY INSURANCE | ) | |
| COMPANY, *et al.,* | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION
*Plaintiff's Motion to Compel Discovery, Doc. 49*

## I.   BACKGROUND & PROCEDURAL HISTORY

In June of 2010 Plaintiff Terrance Colbert entered an unconventional real estate purchase with Leticia R. Couttien, who at the time was the "girlfriend' of Hal Harris.[1] Harris, as a real estate broker, assisted Colbert and Couttien with the purchase of the Real Property, and all three planned to move into it, along with Couttien's daughter.[2] However, Harris was not on the mortgage or deed.[3] Colbert, Harris, and Couttien agreed that Harris would invest "sweat equity" by making or overseeing repairs, and he and Colbert would finance the repairs.[4] The three agreed that Harris could buy Colbert's property interest if Harris and Couttien got married

---

[1] Harris was a plaintiff in this case but voluntarily withdrew his claims. (*See* Docs. 17, 18, 19, and 20).

[2] (Doc. 1 at ¶¶ 10, 20, 23).

[3] (*Id.* at ¶ 19).

[4] (*Id.* at ¶¶ 10, 20).

before April 1, 2013.[5] If Harris and Couttien did not marry by that date, or if Couttien did not repay monies owed to Colbert and Harris by that date, then Couttien's interest in the Real Property would be surrendered to Colbert.[6]

Harris referred Colbert and Couttien to Defendant Debra Colucci, an insurance agent of Defendant Allstate, to procure homeowners' insurance for the Real Property.[7] Before the insurance policy was issued, Allstate sent an Evidence of Insurance document to Harris, who provided it to Colbert and Couttien.[8] Colbert noticed that the Evidence of Insurance omitted him as an insured, and he asked Harris to contact Colucci about the omission.[9] Colucci stated the omission would be corrected, and Colbert would be listed as an insured.[10] Allstate issued a Homeowners Insurance Policy for the Real Property ("Policy") on July 2, 2010.[11] The Policy lists Colbert as an "Additional Insured" instead of an "Insured," which Colbert believes was due to verbal requests by Couttien that were unknown to Colbert or Harris. (Doc. 1, ¶ 33).

---

[5] (*Id.* at ¶ 21).
[6] (*Id.*).
[7] (*Id.* at ¶ 24).
[8] (*Id.* at ¶ 29).
[9] (*Id.* at ¶ 30).
[10] (*Id.*).
[11] (Doc. 6-4, p. 32).

In October of 2012 Colbert and Couttien both executed documents conferring Powers of Attorney on Harris.[12] Three days later Harris sent a letter to the Insurance Agent who sold the policy asking her to remove Couttien from the policy because she "would soon cease being an owner of the property."[13] Six months later, on April 8, 2013, Harris, using his power of attorney, executed a quit claim deed transferring all of Couttien's ownership interest in the real property to Colbert.[14] On May 13, 2014 Couttien filed for Bankruptcy.[15] On July 24, 2013 Couttien file a Complaint in the Pike County Court of Common Pleas against Colber and Harris, claiming Breach of Fiduciary Duty, *Lis Pendens* as to the real estate that is the subject of this claim, and a Petition for Exclusive Possession of the Property, and a Motion to Strike Deed, requesting that the deed purporting to transfer her interest in the property to Colbert be stricken.[16] On August 22, 2014 Colbert saw (apparently for the first time) that personal property had been removed from the residence. On that same day Colbert also "called and informed Allstate: 1) of theft of the personal property from The Real Property; and 2) that Couttien was likely the thief."[17]

---

[12] (*See* Doc. 1, ¶¶ 10, 14, 22).

[13] (*See* Doc. 2, p. 18).

[14] (*See* Doc. 1, ¶ 52).

[15] *In re: Couttien*, No. 5:14-BK-02262-JJT (Bankr. M.D. Pa.); *see also Colbert v. Couttien*, No. 5:14-AP-2262-JJT (Bankr. M.D. Pa.).

[16] (Doc. 56-1) (order issued in *Couttien v. Colbert*, No. 1171-2013 Civil (C.C. P. Pike Cnty. Jan 21, 2020)).

[17] (Doc. 1, ¶ 91).

On September 17, 2014, Colbert received a Letter from Allstate employee Cathy Lukyanchuk, stating that the policy lists Couttien as "Insured" and does not list Colbert as "Insured." (Doc. 1, ¶ 95).

Colbert's contract and unjust enrichment claims under the policy have been dismissed with prejudice, however, the insurance bad faith and related claims remain.[18] The Defendant's right to raise a statute of limitations defense to those claims by a motion for summary judgment was preserved. With this background we turn to the Motion to Compel Discovery (Doc. 49) and the related filings.[19]

## II.   LEGAL STANDARDS

To resolve this motion, we begin by discussing the legal standards relevant to Plaintiff's motion to compel discovery.

### A.   DISCOVERY STANDARDS, GENERALLY

The scope of discovery that may be obtained under Federal Rule of Civil Procedure 26 is broad. Rule 26(b)(1) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense

---

[18] (Docs. 26) (Report and Recommendation); (Doc. 28) (Order Adopting Report and Recommendation).

[19]  (Doc. 50) (Defendants' Brief in Opposition to motion to compel); (Doc. 54) (Plaintiff's Brief in Support of motion to compel); (Doc. 56) (Defendants' Response to Plaintiff's Brief in Support).

of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

On motion by the parties, or on its own, the court must limit the frequency or extent of discovery otherwise allowed if it determines that "the discovery sought is unreasonably cumulative or duplicative," "can be obtained from some other source that is more convenient or less burdensome," "the party has had ample opportunity to obtain the information by discovery," or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[20] When imposing such limitations, courts should bear in mind the purpose of discovery—to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent,"[21] and "narrow and clarify the basic issues between the parties."[22] Furthermore, a party may not ordinarily discovery documents an tangible things that are prepared in anticipation of litigation for trial by another party or its representative.[23]

Rule 34 of the Federal Rules of Civil Procedure governs the production of documents. Rule 34 provides that, during discovery, "[a] party may serve on any other party a request within the scope of Rule 26(b)" to produce documents "in the

---

[20] Fed. R. Civ. P. 26(b)(2)(c).

[21] *United States v. Proctor & Gamble Co*., 356 U.S. 677, 682 (1958).

[22] *Hickman v. Taylor,* 329 U.S. 495, 501 (1947).

[23] Fed. R. Civ. P. 26(b)(3).

responding party's possession, custody or control." Fed. R. Civ. P. 34(a). "[T]he responding party is not obliged to produce documents that it does not possess or cannot obtain."[24]

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling answer, designation, production or inspection" if a party fails to produce or make available for inspection requested documents under Rule 34.[25] The party moving to compel discovery under Federal Rule of Civil Procedure 37 bears the initial burden of demonstrating the relevance of the requested information.[26] If this initial showing is made, the resisting party can oppose by showing that the material requested is not relevant under Rule 26 or that the burdens of production outweigh the "ordinary presumption" in favor of disclosure.[27]

Rulings regarding the proper scope of discovery under Rule 26, and the extent to which discovery can be compelled pursuant to Rule 37 are considered non-

---

[24] *Corradi v. New Jersey Parole Board*, No. 16-5076, 2019 WL 1795545, at *1 (D.N.J. Apr. 29, 2019).

[25] Fed. R. Civ. P. 37(a)(3)(B)(iv).

[26] *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 25 (E.D. Pa. 2016).

[27] *Id.*

dispositive.[28] A Magistrate Judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion."[29]

## B.   DISCOVERY OF ATTORNEY WORK PRODUCT

The U.S. Supreme Court has long recognized the existence and importance of the confidential nature of an attorney's work product.

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

> This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on

---

[28] *Halsey v. Pfeiffer*, No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010).

[29] *Id. (quoting Kresefky v. Panasonic Commc'ns and Sys Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *see also George v. Pennsylvania Turnpike Comm'n*, No. 1:18-CV-766, 2020 WL 2745724, at *2 (M.D. Pa. May 27, 2020).

the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.[30]

In 1988 the Third Circuit explained in detail the history and rationale behind the Attorney Work Product privilege.   A quote at length from their opinion is instructive:

> Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3), which provides: *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

> The district court's ruling that the work product privilege is inapplicable to documents containing mental impressions of anyone other than a lawyer is inconsistent with the plain language of the rule. The rule, applicable to civil cases, is a codification of the federal common law rule announced in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and that rule applies even in criminal cases. *United States v. Nobles,* 422 U.S. 225, 236, 95 S.Ct. 2160, 2168, 45 L.Ed.2d 141 (1975). In the latter context the Supreme Court has observed that while the rule shelters the mental processes of any attorney, it is not so restricted. Rather, ... the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary

---

[30] *Hickman*, 329 U.S. at 510–11.

system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect materials prepared by agents for the attorney as well as those prepared by the attorney himself. *Id.* at 238–39, 95 S.Ct. 2170. Accordingly, federal courts have consistently ruled that the work product doctrine is not inapplicable merely because the material was prepared by or for a party's insurer or agents of the insurer. *See Railroad Salvage of Conn. Inc. v. Japan Freight Consolidators (U.S.A.), Inc.,* 97 F.R.D. 37, 41 (E.D.N.Y.1983) (holding that correspondence between defendant and its liability carriers was protected), *aff'd,* 779 F.2d 38 (2d Cir.1985); *Home Ins. Co. v. Ballenger Corp.,* 74 F.R.D. 93, 101 (N.D.Ga.1977) (protecting from discovery a report to plaintiff insurer's home office made by plaintiff's regional claims supervisor). Counsel for an insurer may invoke work product protection in favor of documents prepared by it in anticipation of litigation even though the insurer is not a named party in an action. *See Basinger v. Glacier Carriers, Inc.,* 107 F.R.D. 771, 772–73 (M.D.Pa.1985) (non-party liability insurer was entitled to a Rule 26(c) protective order as to materials it prepared in anticipation of litigation). In *Hoffman v. Owens–Illinois Glass Co.,* 107 F.R.D. 793, 794 (D.Mass.1985), the court held that a workers' compensation insurer, holding a subrogation interest in an action brought by the claimant against the manufacturer of a defective machine, was the claimant's "representative" for purposes of asserting the work product doctrine. The *Hoffman* holding is closely in point for purposes of the instant case and is unquestionably sound.[31]

Our own court has likewise expressed the breadth of the work product doctrine. In a recent opinion Chief United Sates District Judge Matthew Brann described the rule this way:

The work-product privilege has two sources. The first is Rule 26(b)(2), which protects only "documents and tangible things." Rule 26 protects

---

[31] *United Coal Companies v. Powell Constr. Co.*, 839 F.2d 958, 966–67 (3d Cir. 1988)

material when it is "prepared in anticipation of litigation" "by or for another party or its representative." This protected work product is further divided into two categories: "ordinary" and "opinion" work product. Opinion work product, which includes any materials containing "mental impressions, conclusions, opinions, or legal theories," is entitled to greater protection than ordinary work product, which encompasses everything else.

The second source of the work-product privilege is the United States Supreme Court's decision in *Hickman v Taylor*. *Hickman* has been partially codified by Rule 26(b)(3), but it set forth the principles upon which the work-product privilege is founded. The decision was motivated by the " 'strong public policy' underlying the work-product doctrine." And *Hickman* has been used to provide greater protection than that afforded under Rule 26 alone.

Under both Rule 26 and *Hickman*, opinion work product "is accorded an almost absolute protection from discovery." This is because, ordinarily, "any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases."[32]

## III.  DISCUSSION

Colbert served defendant Allstate with Interrogatories and a Request for Production of Documents.  Allstate answered the Interrogatories and provided over 1,000 pages of documents, all Bates Stamped. It asserts that it has provided its entire claim file in this insurance coverage case, albeit with any attorney work product redacted. Plaintiff refers to this as a "document dump." Allstate also provided a

---

[32] *Bolus v. Carnicella*, No. 4:15-cv-1062, 2020 WL 6531007 (M.D. Pa. Nov. 5, 2020) (footnotes omitted); *Whitmore v. CBK Resort Holdings, LLC*, No. 3:21-CV-1606, 2022 WL 2717628 (M.D. Pa. July 13, 2022) (Saporito, M.J.); *Andrews v. D2 Logistics, Inc.,* No. 1:21-CV-0869, 2022 WL 4079595 (M.D. Pa Sept. 6, 2022) (Carlson, M.J.).

privilege log (*see* Docs. 56, 49-1, pp. 2-3). The items excluded in the privilege log were all related to the attorney work product. Colbert sent Allstate a deficiency letter (Doc. 49-3) and Allstate responded (Doc. 50-2). Allstate objected to the wording of certain interrogatories but did provide a redacted copy of their claim file related to this insurance coverage dispute. Having reviewed Allstate's responses to the interrogatories (Doc. 49-1, pp 1-10) we are satisfied that Allstate responded in good faith and provided the properly requested documents (Without reviewing each request, see for example the response to interrogatory no. 7 at Doc. 49-1, pp. 4-5).

Colbert also sent Allstate a Request for Production of Documents and Allstate responded. (Doc. 49-2). We have reviewed the answers to this Request and believe they are responsive and adequate.

Colbert provided a nineteen-page deficiency letter addressed to Allstate and attached it as Exhibit C to the motion to compel. (Doc. 49-3). The objections to Allstate's responses are overbroad and contain unsupported allegations of conspiracy. (Doc. 49-3, pp. 1-19). To the extent that Allstate should later rely on documents that were withheld as privileged by the attorney work product doctrine Colbert has preserved his objection (*E.g.,* Doc. 49-3, pp. 11-12, response to paragraph 11).

**IV.    CONCLUSION**

For the foregoing reasons Colbert's Motion to Compel Discovery (Doc. 49) will be denied.  An appropriate Order will be entered.

Date: April 7, 2023                              BY THE COURT

<u>*s/William I. Arbuckle*</u>
William I. Arbuckle
United States Magistrate Judge